UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ANGELICA PERALTA CALDERON,   ) | |
| ) | |
| Petitioner,   ) | |
| ) | |
| v.   ) | No. 4:25-cv-00254-TWP-KMB |
| ) | |
| SAM OLSON,   ) | |
| KRISTI NOEM,   ) | |
| PAMELA BONDI,   ) | |
| SCOTT MAPLES JR.,   ) | |
| ) | |
| Respondents.   ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on Petitioner Angelica Peralta Calderon's ("Calderon") Petition for Writ of Habeas Corpus. (Dkt. 1). Calderon is a Mexican citizen who entered the United States without inspection about four years ago. On or about September 17, 2025, Immigration and Customs Enforcement ("ICE") Officers arrested Calderon and placed her removal proceedings under the Immigration and Nationality Act ("INA"). She now petitions the Court under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at 11. For the reasons explained below, the Court grants the Petition to the extent that no later than **January 22, 2026**, Respondents must either: (1) afford Calderon an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release her from custody, under reasonable conditions of supervision.

I.   **BACKGROUND**

Calderon entered the United States without inspection over four years ago. (Dkt. 1 ¶ 38). On September 16, 2025, ICE agents arrested Calderon in Illinois and transferred her to the ICE Broadview Facility in Chicago. Dkt. 8-1 at 10 (ERO Narrative). On September 17, Department of

1

Homeland Security ("DHS") issued Calderon an I-200 "Warrant for Arrest of Alien," which authorizes immigration officials "pursuant to sections 236 and 287 of the [INA] . . . to serve warrants for arrest of immigration violations." *Id.* at 12. On September 18, DHS served Calderon with a "Notice to Appear," placing her in removal proceedings under 8 U.S.C. § 1229(a), and charging her with inadmissibility under § 8 U.S.C. §§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I). *Id.* at 1. The "arriving alien" checkbox is unmarked. *Id.*

At some point, Calderon was transported to the Clark County Jail in Jeffersonville, Indiana, where she has been detained ever since. (Dkt. 1 ¶ 42). Calderon has not moved for or been given a custody re-determination hearing. *Id.*, ¶¶ 43–44.

## II.    DISCUSSION

Calderon argues that her current detention violates the INA (Count I) and the Due Process Clause of the Fifth Amendment (Count II). *Id.*, ¶¶ 45–51. Respondents argue that Calderon's habeas petition is premature; that she is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A); and, in the alternative, she is lawfully detained under the INA pursuant to 8 U.S.C. § 1226(a) because she will have the opportunity to receive a hearing; and that her detention is constitutional. (Dkt. 8).

The Court finds that Calderon's detention is governed by § 1226(a) and that it is unlawful because she has not been afforded a bond hearing. Because Calderon is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

### A. Exhaustion

Respondents argue that Calderon's claims are premature because she has not moved for a bond hearing. Dkt. 8 at 6. Calderon argues that it is futile to attempt to exhaust her administrative

remedies because the BIA has already directly addressed the issue of her statutory qualification for bond in *Matter of Yajure Hurtado*. Dkt. 9 at 2–3.

Respondents do not cite a statute requiring Calderon to request a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, Dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19,2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Calderon was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which

3

involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> > (1) may continue to detain the arrested alien; and
> >
> > (2) may release the alien on—
> >
> > > (A) bond . . . ; or
> > >
> > > (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Section 1225(a)(1) defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2)(A) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

C. **Petitioner Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

Calderon argues that the statute's text, structure, and history make it so that she can only be detained under § 1226(a). *See* Dkt. 9 at 3–4. Respondents counter that § 1225(b)(2)(A)'s text plainly refers to people in Calderon's position—unadmitted aliens and § 1225(b)(2)(A) applies. As many courts around the country have found, Calderon's interpretation is more convincing.

i. **Statutory Text**

As seen above, § 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is

5

*not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Though Calderon claims that she does not fit into any of the three criterion, *see* Dkt. 9 at 8–10, the Court will focus on the meaning and relevance of the phrase "an alien seeking admission."[1] Respondents argue that "an alien seeking admission" is synonymous with "applicant for admission." *See* Dkt. 8 at 9 (citing *Montoya Cabanas*, 2025 WL 3171331, *5 ("[a]ttempts by Petitioner to distinguish an applicant for admission from an alien seeking admission are unavailing.")(emphasis in original)). Thus, according to Respondents, the fact that Calderon fits the description of an "applicant for admission" (i.e., "an alien" who is "present in the United States" who "has not been admitted"), subjects her to mandatory detention under this provision. In contrast, Calderon argues that the statute clearly puts forth "three unique terms in the same provision" and Calderon does not logically fit into *all* three terms. Dkt. 9 at 9–10.

As the Seventh Circuit recently explained regarding § 1225(b)(2)(A), "an alien seeking admission" cannot be read as synonymous with "applicant for admission" without violating the rule against surplusage. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."))[2] "If an interpretation of

---

[1] Calderon's arguments that she cannot be considered "an applicant for admission" who is not "clearly and beyond a doubt entitled to be admitted" are not convincing. Section 1225(a)(1) is titled "Aliens treated as applicants for admission" and it provides: "an alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ) shall be deemed for purposes of this *chapter* an applicant for admission." (emphasis added). There is no dispute that Calderon is an "alien" who is "present in the United States" who "has not been admitted." Because she was arrested by an immigration officer and served with a Notice to Appear, it is evident that Calderon is not "clearly and beyond a doubt entitled to be admitted."

[2] The Court cites *Castañon-Nava* as persuasive precedent. Following, *Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026), "[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees

6

one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Indeed, Respondents' interpretation posits that Congress drafted "applicant for admission" and "an alien seeking admission" as synonyms in the same exact sentence. Furthermore, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so." *Id.* Thus, reading § 1225(b)(2)(A) in a way that gives meaning to each word necessitates that it puts forth three distinct criteria.

Calderon cannot be said to be "an alien seeking admission." Unlike "applicant for admission," "an alien seeking admission" is not defined within § 1225 or elsewhere in the INA. Therefore, the Court turns to the plain meaning of the terms. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). "Seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As courts in this district have explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also*

---

with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that."

*Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission.").

Calderon is plainly not "seeking admission." She already entered the United States four years ago. Since then, she lived and worked in Illinois, hundreds of miles from the U.S.-Mexico border. The fact that Calderon does not fit into the third criterion, "seeking admission," supports the conclusion that § 1225(b)(2)(A) does not apply to her.

    ii. **Statutory Context and Framework**

Respondents' statutory argument also fails because it only makes sense when § 1225(b)(2)(A) is read in complete isolation from the rest of § 1225 and the INA's statutory scheme. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted); *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988) (rejecting bankruptcy petitioner's interpretation of § 362(d)(1) as protecting a secured parties right to immediate foreclosure because the language of related provisions within the statutory scheme made it clear that it did not include this).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a territorial border or a designated port of entry. As Respondents concede, § 1225 governs "inspection." Dkt. 8 at 8. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S. Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) et seq (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). However, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained[.]" *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025) (referring to detention after the expiration of humanitarian parole). This meaning of "inspection" is supported by the fact that § 1225 repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

In sum, the context of § 1225 lends support to Calderon's argument that § 1225(b)(2)(A) only encompasses migrants seeking admission at the border or a port of entry. However, as seen

9

in the record, Calderon was not detained after an examining officer inspected her upon arriving to the United States—rather, she was detained in Illinois after living within the country for more than four years.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Calderon because she is an "alien," who was "apprehended" and "detained" after a warrant was issued for her arrest. Indeed, the arrest warrant explicitly references the authority to arrest Calderon pursuant to § 1226. *See* Dkt. 8-1 at 12. Furthermore, the fact that "arriving aliens" and undocumented people who have lived in the country for a while would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with

10

specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing id. § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting Respondents' reading would render § 1226(c) unnecessary.

### iii. Statutory History

Respondents' argument also fails when considering the statute's history. After Congress passed the current detention scheme as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, until the recent policy shift in July of 2025, the government previously applied section 1226(a) to unadmitted noncitizens, such as Calderon, who were arrested in the interior of the country after already entering without inspection. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). Though an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), taken together, the plain text of the statute, the statutory context, and the statute's

11

prior usage and history demonstrate that Calderon may only be lawfully detained pursuant to § 1226(a).

### D. Opportunity for Bond Hearing

In the alternative, Respondents argue that Calderon is being lawfully detained under § 1226a "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 8 at 13. Thus, this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Calderon will have a bond hearing. In fact, Respondents contend that Calderon is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition.

Calderon has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, her detention pursuant to § 1226(a) is currently unlawful.

### III.   SCOPE OF RELIEF

Calderon is entitled to habeas relief because her continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Calderon requests immediate release from custody or, in the alternative, an individualized bond hearing. Dkt. 1 at 11. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining

12

that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Calderon's immediate release and instead orders Respondents to provide her an individualized bond hearing as required by § 1226(a) and its regulations.

## IV.    CONCLUSION

The Court grants the petition to the extent that no later than **January 22, 2026**, Respondents must either: (1) provide Calderon with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Calderon from custody, under reasonable conditions of supervision. No later than **January 24, 2026**, Respondents must file documentation certifying that they have provided Calderon with a bond hearing, including apprising the Court of the results of the hearing. If Respondents release Calderon, then they must file documentation certifying her release. The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 1/14/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Alush Kola
Law Offices of Al Kola
alkolalaw@yahoo.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov